UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**FILED**
APR 27 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-223-GWU

SHAHROKH YASSI,            PLAINTIFF,

VS.        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Yassi

>   Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

Yassi

evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

3

Yassi

symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be

4

Yassi

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Yassi

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

6

Yassi

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Shahrokh Yassi, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of hypothyroidism (controlled with medication), gout, peptic ulcer disease, hypertensive cardiovascular disease, an anxiety disorder, and a history of borderline intellectual functioning. (Tr. 23). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Yassi retained the residual functional capacity to perform his past relevant work as a salesperson and shift supervisor and, therefore, was not entitled to benefits. (Tr. 27-30). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to light level exertion, and also had the following non-exertional impairments. (Tr. 477). He: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally stoop and crawl; (3) could have no exposure to temperature extremes or workplace hazards such as dangerous machinery and unprotected heights; and (4) would be

7

Yassi

limited to work requiring no more than a "limited but satisfactory" ability to follow work rules, deal with the public, maintain attention and concentration, and understand, remember, and carry out detailed instructions. (Tr. 477-8). The VE responded that such a person could perform all the plaintiff's prior work and, in the alternative, he also identified other jobs the person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 478-9).

On appeal, this Court must determine whether the hypothetical factors are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

One of the plaintiff's primary allegations concerned nervousness and depression. He was treated at the Comprehensive Care Center beginning early in 2002 with complaints of panic attacks, and was given a diagnosis of panic disorder with agoraphobia and a major depressive disorder. (Tr. 300-1). His treating psychiatrist, Dr. Hayag, assigned a Global Assessment of Functioning (GAF) score of 55 (Tr. 377) , reflecting moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. Dr. Hayag prescribed a variety of medications including Paxil, Zoloft, Trazodone, and Neurontin. (Tr. 367-77).

Dr. Kevin Eggerman, a psychiatrist, examined the plaintiff in May, 2002, at which time Mr. Yassi reported that the medications that he had been given so far at CCC had not been helpful. (Tr. 261). Mr. Yassi said that he had no friends, no activities, and avoided the public. (Tr. 262-three). Dr. Eggerman felt that Mr. Yassi

8

Yassi

was mildly to moderately anxious, but not depressed, and had fair concentration with an estimated low average IQ. (Tr. 263-4). He also diagnosed a panic disorder but without agoraphobia and gave a GAF score of 60-65, both currently and for the past one year. (Tr. 264). A GAF of 60 is the upper limit of "moderate difficulty" under the DSM-IV-TR, while 61-65 reflects only mild symptoms. Dr. Eggerman commented that, in terms of specific restrictions, Mr. Yassi would have a "good" ability to understand and remember simple instructions, and a "fair" ability to understand and remember moderately complex or complex instructions, relate to co-workers and supervisors, persist on tasks, and tolerate work-related stress in a routine eight-hour day. (Id.).

Dr. Jay Athy, a state agency psychologist who reviewed the record at this point, concluded that Mr. Yassi would have a "moderately limited" ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 280-1). Another non-examining state agency psychologist, Dr. Edward Stodola, affirmed Dr. Athy's report, but added a "moderately limited" ability to interact appropriately with the general public. (Tr. 319-21).

The plaintiff was subsequently consultatively examined by Reba Moore, a psychologist who administered IQ testing showing scores of 70 and below, but the

psychologist opined that while this was an accurate estimate of Mr. Yassi's current day-to-day functioning, several factors, including cultural ones, could have lowered the scores, or caused "regression." (Tr. 339-41). He could read at the fourth grade level and perform arithmetic at the sixth grade level. (Tr. 340). Ms. Moore diagnosed a panic disorder with agoraphobia superimposed on a generalized anxiety disorder, a severe depressive disorder, "rule out" mild mental retardation, and a schizoid personality disorder with paranoid traits. (Tr. 343). She assigned a GAF of 55 (Id.), and completed a functional capacity assessment indicating that Mr. Yassi had no useful ability to deal with the public or deal with work stresses, had a "seriously limited but not precluded" ability to relate to co-workers, interact with supervisors, function independently, maintain attention and concentration, understand, remember, and carry out complex job instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (Tr. 334-5).

As the plaintiff points out on appeal, although the ALJ discusses the evidence from the sources, he never specifically accepts or rejects any of the expert opinions, except to say in a footnote that Reba Moore's opinion "as to Mr. Yassi's level of intellectual functioning is inconsistent with the level of education completed by Mr. Yassi and [his] stable work history." (Tr. 24). Reba Moore and Dr. Eggerman were both one-time examiners and, as such, the ALJ could have chosen to follow the restrictions of either. However, Dr. Eggerman's restrictions were not specifically

10

Yassi

given to the ALJ. The ALJ appeared to closely follow the findings of the state agency reviewers, except in providing the term "limited but satisfactory" in place of the term "moderate" used by the state agency experts, but the state agency experts themselves did not make findings that clearly track the restrictions of Dr. Eggerman, particularly in regarding his limitation on stress[1].

In addition, the Court notes that the ALJ questioned the plaintiff's credibility in testifying that he was impaired as a result of a stroke. (Tr. 471). The ALJ stated that there was no medical evidence of a stroke. (Tr. 24). In fact, as counsel for the plaintiff points out, the report of a treating cardiologist, Dr. Reddy, includes an assessment of "CVA," an abbreviation for "cerebrovascular accident," or stroke. (Tr. 349).[2] Dr. Reddy's records appear to be incomplete in that some do not have signature pages, so it is not clear what the opinion of a CVA was based on, but it is clear that the plaintiff may well have been told by a treating source that he had a stroke. Questioning his overall credibility based on this issue, then, would appear to be dubious.

---

[1] Moreover, the GAF score of 55 assigned by the treating psychiatrist, Dr. Hayag, was more consistent with the report of Reba Moore than it was with Dr. Eggerman's (Tr. 60-65). Although the ALJ discussed in a general way indications in the CCC notes that the plaintiff's condition was "stable," this in itself does not reconcile the CCC reports with the higher level of functioning found by Dr. Eggerman. Some analysis of this point is in order.

[2] Evidence submitted to the Appeals Council includes an MRI of the brain by a neurologist, Dr. Kahn, showing "areas of small vascular ischemic gliosis." (Tr. 431). This report was dated slightly after the date of the ALJ's decision.

11

Yassi

The plaintiff has requested a remand under Sentence Four of 42 U.S.C. Section 405(g) based on evidence submitted to the Appeals Council, some of which may have been in existence prior to the time of the ALJ's decision, based on a prehearing brief submitted by the plaintiff's former attorney before the administrative hearing. (Tr. 129-35). Since the case is being remanded on other grounds, this evidence may be considered, along with any other new evidence, by the ALJ.

The decision will be remanded for further consideration of the factors set out in this opinion.

This the \_\_\_27\_\_\_ day of April, 2005.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE